ELIJAH BARBER'S ADM'R v. ROBERT W. BENNETT.

*Evidence. Memoranda. Res Gestœ. Deposition.*

1. Memoranda of disputed items covering a period of ten years, made on a loose strip of paper, found by an administrator in his intestate's desk, used by him in his dwelling-house, without any proof that they were original entries, except the appearance of the paper, or that they were made at or about the time when the right to charge first accrued, or that it was the intestate's custom to make charges in like manner, although the administrator testified that they were in his handwriting, are not admissible, when offered, not to refresh the recollection, nor to corroborate the testimony, of a witness, but as independent evidence to prove that the defendant was indebted to the intestate.

2. DECLARATIONS—RES GESTÆ. A part of the plaintiff's claims was for money paid by his intestate for the defendant to the treasurer of a certain company. The defendant admitted that the intestate paid the money, but insisted that he was the owner thereof, and merely sent it by him to pay to the company; *Held,* that the intestate's declarations made at the time of payment, tending to show that it was his own money, and not the defendant's, were admissible as a part of the *res gestœ.*

3. EVIDENCE. The plaintiff, for the purpose of establishing his claims, was allowed to introduce the books of account of a certain company with which the defendant had had dealings; *Held,* that it was error to exclude the defendant's account with the same company.

4. DEPOSITION. The defendant was cited " to appear before E. H. Beer, a notary public, at the residence, etc., to be present at the taking of the deposition," etc.; *Held,* that the name of the magistrate before whom the deposition was to be taken, was sufficiently indicated in the citation.

ASSUMPSIT. Trial by jury, December Term, 1885, WALKER, J., presiding. Verdict for the plaintiff.

Some of the entries on " Exhibit A," referred to in the opinion, were as follows: " R. W. Bennett, to Elijah Barber, Dr. October 6, 1886, to cash, $175, int. $101.75; April 28, 1868, to cash, $200, int. $108; June 26, 1868, to cash, $313.74,

int. $157.56. Interest cast to January 1, 1877, $1,056.05."
The others were similar.

Daniel J. Barber, who is the plaintiff in this suit as administrator of said Elijah Barber, who died in August, 1884, was called as a witness, and testified that the Plunkett & Barber Manufacturing Company was organized in Pownal in 1866, and did a manufacturing business there from that date till 1871, when the stock in the company which was then owned by different individuals was all sold out to other parties and a new corporation formed by them; that from 1867 to said sale in 1871, he was clerk and treasurer of said company, and as such had charge of its books and financial affairs.

It further appeared from the testimony of both sides, that the defendant, who was a son-in-law of said Elijah Barber, and from the fall of 1867 until October, 1870, resided with said Elijah and his family in Pownal, in 1866 subscribed for $5,000 of the capital stock of said company, and thus became the owner and holder thereof to that extent until he sold out his stock with the rest of the stockholders in 1871.

Said Daniel J. Barber further testified, that the defendant, during all the time from 1867 until 1871, when he sold his stock, had a large account both debit and credit with said company, and which account as the treasurer of the company he kept on the company books; and the plaintiff in connection with his testimony, produced and offered in evidence said books showing defendant's account, which showed that there was a large account between the company and defendant from 1867 to 1871, covering many items both debit and credit.

Said Barber further testified that Elijah Barber paid to him at the office of the company on the 27th day of October, 1866, the $175 on plaintiff's specification, (which item is disputed), and that he credited the amount to the defendant upon the books of said corporation by direction of said

Elijah; and it so appears to his credit upon the books of said company.

The witness produced a memorandum book, which he testified belonged to said company, and which he used to carry in his pocket, and in which, while treasurer, he was accustomed, when convenience required, to enter items of account of different individuals with the company; and under date of October 27, 1866, showed an entry in his handwriting as follows:

"E. B.　　Received R. W. Bennett, $175.
Self.　　Received R. W. Bennett,　25."

And the same appeared as credits in substantially the same form upon the defendant's ledger account.

The witness was then examined by his counsel in reference to said matter as follows: Int.: "Who paid you that $175?" Ans.: "Elijah Barber." Int.: "If you have any personal recollection, you may state where he paid it?" Ans.: "At the office of the company at North Pownal." Int.: "Who paid you the $25 that is credited to Dr. Bennett?" Ans.: "I think father brought it, and he said Dr. Bennett sent it." Defendant excepted to the remark of the witness that his father said Dr. Bennett sent it. Int.: "Sent what?" Objected to by defendant. Ans.: "The $25." Int.: "What did he say to do with the $25?" Objected to by defendant. Ans.: "He said the doctor had sent that by him." Int.: "When your father, Elijah Barber, handed this money over to you, what did he say with reference to the $25, as to who gave it to him, if any one, or who sent it?" Objected to by defendant. Ans.: "Dr. Bennett."

The exception stated:

"Said Daniel J. Barber further testified that he recollected the transaction of his father paying him the $175, and the $25, as above stated and under the circumstances above related, and that the letters 'E. B.' were made at the time the entry was made to indicate, and did indicate, that the money, $175, was paid into the company by Elijah Barber. The defendant testified that he paid the $25, referred to in the above testimony, to Daniel J. Barber in person, and that he sent the $175 by Elijah Barber, and delivered him the

money the day before he paid the $25 to himself. There was no other evidence tending to show that Elijah Barber ever had anything to do with the $25, or any authority in reference to it. The $25 is not in plaintiff's account, and is not and never was claimed by him. The court admitted each of the questions above objected to; and the witness answered as above, to all which the defendant excepted. The counsel also made similar inquiries as to what Elijah Barber said about the $175 when he paid it over, and the same were admitted against the objection and exception of the plaintiff."

The other facts are sufficiently stated in the opinion and head-notes.

*W. B. Sheldon* and *J. C. Baker*, for the defendant.

A party cannot make evidence for himself. This rule applies to his administrator. 1 Greenl. Ev. s. 99; *Nourse* v. *Nourse*, 116 Mass. 101; *Whitney* v. *Houghton*, 125 Mass. 451; *Churchill* v. *Smith*, 16 Vt. 560.

The $25 item was not in controversy, and what Elijah Barber said in relation to it as testified to by Daniel J. Barber was not *res gestæ*. It was not a part of any transaction in controversy that it would characterize. These declarations do not come within the rule laid down in *Ross* v. *Bank*, 1 Aik. 52; *Elkins* v. *Hamilton*, 20 Vt. 627; *Eddy* v. *Davis*, 34 Vt. 209; *Stevens* v. *Joyal*, 48 Vt. 291.

Plaintiff's " Exhibit A" should have been excluded.

(1.) Because it is not decedent's original account.

(2.) Because it is unsupported by the requisite evidence as the original account of decedent, as a daily record of the business transactions of the decedent made contemporaneously with the transaction of the business, or as nearly so as circumstances would allow. It should have been excluded under the rule laid down in *Lapham* v. *Kelley*, 35 Vt. 195, affirmed in *Parris* v. *Bellows' Est.* 52 Vt. 353.

(3.) Because the entries are each and every one in favor of the decedent. 1 Greenl. Ev. 118 and *n.; Burnham* v. *Adams*, 5 Vt. 313; *Chase* v. *Smith*, 5 Vt. 556; *Cross* v. *Bar-*

*tholomew,* 42 Vt. 206; *Godding* v. *Orcutt,* 44 Vt. 54; *Hibbard*
v. *Mills,* 46 Vt. 243; *Judevine* v. *Weaks,* 57 Vt. 280.

The defendant's book of account with the Plunkett &
Barber Manufacturing Company was improperly excluded.
*Burnham* v. *Adams,* 5 Vt. 556.

The deposition was improperly admitted. The citation
did not state, as the statute requires, "the name of the
magistrate before whom" the deposition was to be taken.
*St. Johnsbury* v. *Goodenough,* 44 Vt. 662.

*Batchelder & Bates, T. E. Brownell,* and *Tarrant Sibley,*
for the plaintiff.

The declarations of Elijah Barber were admissible. The
import of these inquiries as to the $25 with their answers in
substance amount to just this, that the court allowed the
treasurer of the company to testify that when Elijah Bar-
ber handed him the $25 he said Dr. Bennett sent it.

Similar questions were asked of the witness as to what
Elijah Barber said about the $175. Not the same questions,
but similar.

This information as to who sent the $25 and the directions
as to what should be done with the $175 were important,
and, given by Elijah Barber while handing the money over
to Daniel J. Barber, the treasurer, were a necessary part of
the transaction. Without it the treasurer would not know
to whom to credit it or what to do with it.

They were contemporaneous with the act and so con-
nected with it as to illustrate its character.

They were part of the *res gestœ.* 1 Greenl. Ev. 130-132;
*Elkins* v. *Hamilton,* 20 Vt. 627; *Eastman* v. *Bennett,* 6 Wis.
232; *Ross* v. *Bank of Burlington,* 1 Aik. 43; *White* v. *Mor-
ton,* 22 Vt. 15; *Bank of Woodstock* v. *Clark,* 25 Vt. 308;
*Fifield* v. *Richardson,* 34 Vt. 410; *State* v. *Howard,* 32 Vt.
380; *Pollard* v. *Bates,* 45 Vt. 506; *Danforth* v. *Streeter,* 28
Vt. 490; *Roulston* v. *Roulston,* 64 N. Y. 652.

That the $25 was no part of the plaintiff's claim, does not

render the question inadmissible as to that; for being paid at the same time the $175 was, and the entry being as to both sums, it was necessary in order to explain the entry and the meaning of the terms " E. B." and " self." It was a part of the history of the case. *Brown* v. *Welch,* 38 Vt. 241; *Bennett* v. *Stacey,* 48 Vt. 163; *Davis* v. *Windsor Savings Bank,* 48 Vt. 532.

The plaintiff's " Exhibit A " was admissible. *Nichols* v. *Gould,* 7 Wend. 161; 1 Greenl. Ev. 148, 149; *Welch* v. *Barrett,* 15 Mass. 385; *Mathers* v. *Robinson,* 49 Mass. 269; *Houghton* v. *Paine,* 29 Vt. 57; *Bacon* v. *Vaughn,* 34 Vt. 73; *Cummings* v. *Fullam,* 13 Vt. 434; *Holbrook* v. *Gray,* 6 Mass. 216; *Bank* v. *Knapp,* 4 Mass. 96-108; *Burnham* v. *Adams,* 5 Vt. 315; *Kendall* v. *Field,* 14 Me. 30; 1 Smith Lead. Cas. 294, 298, 314.

The American cases do not require that the entries should be against the interest of party making them.   4 Mass.

It is no objection to the admissibility of an account that it is on a sheet of paper instead of in a book kept in due form.   That fact only goes to the weight to be given to it.  *Bell* v. *McLeran,* 3 Vt. 188.

Neither is it any objection that it was made long after the transaction.   That, too, only goes to the weight of the testimony.  *Read* v. *Barlow,* 1 Aik. 145; *Walker* v. *Shepard,* 5 Vt. 363; *Newell* v. *Keith,* 11 Vt. 214; 1 Smith Lead. Cas. 314, 315; *Bailey* v. *Danforth,* 53 Vt. 505; *Kingsland* v. *Adams,* 10 Vt. 201.

Again this paper is admissible as a memoranda to corroborate the testimony of Elijah Barber.   The objection to it was general; if it was admissible for any purpose it was not error to admit it.  *Norton* v. *Downer,* 33 Vt. 26; *Bank* v. *Evarts,* 45 Vt. 293.

The opinion of the court was delivered by

ROYCE, Ch. J.    This is an action of assumpsit in the common counts, and is prosecuted by Daniel J. Barber, as administrator of Elijah Barber.   The defendant pleaded

the general issue and five special pleas in bar; but as no question is made as to their form or sufficiency, or as to evidence applicable to them, it is unnecessary to particularly refer to them. We will first consider the exception taken to the admission of "Exhibit A" as evidence.

To understand the objections made to its admission it is necessary to consider the character of the exhibit and the circumstances under which it was offered as evidence. The exhibit was a loose strip of paper upon which entries were made of many of the disputed items embraced in the claims made against the defendant, commencing October 6, 1866, and ending January 1, 1877, and amounting, with interest as there set down, to $3,286.70. The paper was presented by the administrator, who testified that it was in the handwriting of Elijah Barber, and was found by him in the desk of said Elijah at his dwelling-house after his death; and that he could find no other book or account with the defendant among the papers of the said Elijah. Upon that evidence alone the court admitted the paper as evidence.

It was not shown, as in *Bell* v. *McLeran*, 3 Vt. 185, that it was the custom of Elijah Barber to make charges in like manner, or that the charges were made at or about the time when the right to charge first accrued; and there was nothing, aside from the appearance of the paper, to indicate that the entries made upon it were original entries. It had been made apparent when the paper was offered that the items of claim specified upon it were disputed by the defendant; and the only purpose for which the paper could be used was as evidence to sustain the claim made by the plaintiff. It was not used for the purpose of refreshing the recollection of any witness called to testify in relation to the charges made thereon, or as corroborative of the evidence of any witness who had testified concerning them.

The question as to when and under what circumstances the books and accounts of a deceased person may be used as evidence has been much discussed ever since the case of

*Price* v. *The Earl of Torrington,* reported in 1 Salk. 285. The decisions have not been harmonious, as will be seen by reference to the notes to that case found in 1 Smith Lead. Cas. 539, and what is said in 1 Phil. Ev. (7 ed.), beginning on page 263. But it has generally been held that to lay the foundation for the admission of that kind of evidence, it must be shown that the entries were made in the usual course of business of the party making them, and at or about the time of the transaction to which they refer. This qualified right to use such evidence in favor of the party making the entries is in contravention of one of the primary rules of evidence, which forbids the manufacture of evidence by a party in his own favor. Chief Justice PARKER, in *Welsh* v. *Barrett,* 15 Mass. 380, says, in speaking of the rule as thus stated, that it is founded in good sense and public convenience, and that what a man has actually done and committed to writing when under obligation to do the act, it being in the course of the business he has undertaken, and he being dead, there seems to be no danger in submitting to the consideration of the jury.

That is as far as the common law rule of evidence has been relaxed, and as far as it can be, safely. It would be extremely dangerous to allow whatever memoranda a party may have made in his life-time upon loose pieces of paper to be used for the benefit of his estate, as evidence to prove the truth of the facts thereon stated. A memorandum is defined to be a note to help the memory; and this paper, considered in connection with the circumstances under which it was found, partakes of that character. It certainly was not an account so kept and proved as to be admissible as evidence. It has been uniformly held in this State that memoranda are not independent evidence in chief, even during the life-time of the party making them. *Lapham* v. *Kelly,* 35 Vt. 195; *Cross* v. *Bartholomew,* 42 Vt. 206; *Godding* v. *Orcutt,* 44 Vt. 54. The court erred in admitting the exhibit as evidence, and the error cannot be re-

garded as a harmless one. The jury might, and probably did consider the account, as it appeared on that exhibit, of the same value, as evidence, as they would any other account that Elijah Barber might have kept against the defendant; and their verdict, under the charge of the court, may have been predicated upon that evidence.

The exception taken to the admission of the testimony of Daniel J. Barber as to what was said by Elijah Barber at the time he paid the money over to him, is not sustained. It was allowable as a part of the *res gestæ* to show the purpose for which the money was paid, by the direction or declaration of the party paying it. *Bank of Woodstock* v. *Clark*, 25 Vt. 308; *State* v. *Howard*, 32 Vt. 380.

It was error to exclude the defendant's account, kept on his book, with the Plunkett & Barber Manufacturing Company. The plaintiff's evidence tended to show that said company had settled with the defendant, and in that settlement some of the items that were disputed by the defendant were embraced; and the books of the company were put in evidence to show such settlement. The defendant testified that he had kept a correct account of his dealings with the company, and offered his book upon which said account was kept as evidence tending to show that no such settlement was made. In our judgment it was admissible.

The defendant excepted to the admission of the deposition of William Holbrook for the reason that the name of the magistrate before whom it was to be taken was not stated in the citation. The name of the magistrate was sufficiently indicated in the citation, and the deposition was properly admitted.

There are no other errors apparent upon the record that would warrant a reversal of the judgment; but for those we have indicated, the judgment is reversed and cause remanded.