## J. R. WYMAN ET AL.

v.

## J. A. WILCOX'S ESTATE.

BENNINGTON COUNTY, 1893.

BEFORE:   TAFT, ROWELL, TYLER AND THOMPSON, JJ.

*Book account.   Original entries.   Partnership.   Harmless error.*

1.  A paper in the handwriting of the plaintiff's attorney, containing an itemized statement in debt and credit form of the accounts between the plaintiff and intestate, made by the attorney under the direction and from the recollection of the plaintiff after the intestate's death, is not admissible as a book of original entries, although the plaintiff has no other book.

2.  Where an auditor finds from the admissions of the intestate made shortly before his death that he was at that time owing the plaintiffs $400, it is no valid objection to a recovery of that sum in an action of book account, that a portion of the dealings between the plaintiffs and intestate had been in the nature of partnership transactions, it not appearing whether those transactions entered into this balance.

3.  If an auditor finds no fact upon testimony received under objection from which an inference of law can be drawn, the admission of such testimony is not prejudicial error.

Appeal from the action of commissioners for the allowance of claims against the estate of A. J. Wilcox.   Heard at the June term, 1892, MUNSON, J., presiding, upon the report of an auditor and exceptions of both parties thereto.   The

court overruled the exceptions of the plaintiffs, sustained the exceptions of the defendant, and gave judgment on the report for the defendant.    The plaintiffs except.

From the report of the auditor it appeared that the plaintiffs were brothers and partners in all their business trans- actions, including those with the intestate.    The intestate was their uncle and lived on a farm near them during his lifetime.    The intestate died in 1879, and for some fifteen years previous to that date there had been considerable deal between him and the plaintiffs, in reference to which no books of account had been kept by either party.

Upon the trial of the cause before the auditor the plaintiffs offered a paper marked "Exhibit 1" which contained in debt and credit form a statement of account between them- selves and the intestate.    This statement consisted of six items of debit and seven items of credit, extending over a period of about fourteen years.    The plaintiffs testified that this paper was in the handwriting of their attorney and had been drawn up by him since the decease of the said Wilcox and after the appointment of the administrator and the commissioners upon his estate.

The plaintiffs further offered to show that said paper was made by their attorney in their presence and by their direc- tion; that the items, dates and amounts were put down as was directed; that they had not then, and never had any other book of account, that the entries on said paper were the original, or first entries of those transactions in reference to to which the entries were made, and that they had no regular book on which they kept accounts with the said Wilcox or any one else.    They also offered in connection with this testimony said paper writing as evidence.    The testimony and paper were excluded by the auditor, and the plaintiffs excepted.

Upon the trial the plaintiffs introduced a specification of their account consisting of seven items of charge and seven

items of credit, showing a balance due of $603.62, and introduced evidence in reference to these several items. Among other things it appeared that in 1871 the plaintiffs and intestate began removing lumber from a lot of land of which they were tenants in common, and from which they removed lumber during that and the succeeding year.

These operations were carried on under an agreement that the parties were to share in the expenses and profits in proportion to their respective interests in the land. The evidence tended to show, and the referee found that each of the parties contributed their proper shares towards the expense, but was unable to find what portion of the avails of the lumber the parties respectively received. One claim of the plaintiffs was for a considerable amount of this lumber claimed to have been received by the intestate, Wilcox, in excess of his share.

The evidence in reference to all the items in the plaintiffs' specifications, and to all items of deal between the parties, was so meagre and unsatisfactory that the auditor was unable to make, and did not make any finding in reference to any one of these particular items, or in reference to any items of deal between the parties.

The plaintiffs, however, introduced several witnesses who testified that the intestate had said to them shortly before his death that he was indebted to the plaintiffs in the sum of about $400, and from this testimony the referee found that at that time the intestate was indebted to the plaintiffs in the sum of $400, which sum was to be diminished by an item of $10 in favor of the intestate, which accrued subsequent to that time.

One John Wyman was permited to testify under the objection of the plaintifls. The said Wyman testified as to one of the items in the plaintiffs' specifications in reference to which the referee declined to make any finding upon the testimony.

The plaintiffs excepted to the report of the auditor, first, because the auditor excluded exhibit 1 ; second, because the auditor received the testimony of John Wyman.

*Batchelder & Barber* for the plaintiffs.

Exhibit No. 1 was admissible.   It is not necessary that entries should be made upon an account book in order to render them evidence.   These entries were the first and only entries made by the plaintiffs in reference to these transactions.   They were the original entries and were admissible for what they were worth.   *Bell* v. *McLeran*, 3 Vt. 187 ; *Houghton* v. *Paine's Est.*, 29 Vt. 58 ; *Kingsland* v. *Adams*, 10 Vt. 201 ; *Green* v. *Mills' Est.*, 60 Vt. 442 ; *Hunter* v. *Kittredge*, 41 Vt. 360.

The testimony of John Wyman was not admissible, *Wiley* v. *Hunter*, 57 Vt. 479 ; *Wheeler* v. *Wheeler's Est.*, 47 Vt. 637.

In finding the sum due from the defendant to the plaintiffs the auditor did not adjust the partnership accounts of the parties.   He finds the sum due simply as so much due without stating or being able to state what the origin of the indebtedness was.   *Hydeville Co.* v. *Barnes*, 37 Vt. 588 ; *Huxley* v. *Carman*, 46 Vt. 462 ; *Gates* v. *Lockwood*, 27 Vt. 286.

*J. C. Baker* for the defendant.

Exhibit No. 1 was not admissible.   R. L. ss. 1002, 1004 ; *Woodbury* v. *Woodbury*, 48 Vt. 94 ; *Woodbury* v. *Woodbury*, 50 Vt. 152 ; *Parris* v. *Bellows' Est.*, 52 Vt. 351 ; *Barnes* v. *Dow*, 59 Vt. 530 ; *Price* v. *Earl of Torrington*, 1 Smith's Lead. Cas. 535 *et seq.* ; 1 Greenl. Ev. ss. 118, 119 ; *Barber* v. *Bennett*, 58 Vt. 476 ; *Hunter* v. *Kittredge's Est.*, 41 Vt. 359 ; *Green* v. *Mills' Est.*, 60 Vt. 440 ; *Lapham* v. *Kelley*, 35 Vt. 195 ; *Cross* v. *Bartholomew*, 42 Vt. 206 ; *Godding* v. *Orcutt*, 44 Vt. 54.

Partnership transactions cannot be adjusted in an action of book account. *Green* v. *Chapman*, 27 Vt. 236; *Duryea* v. *Whitcomb*, 31 Vt. 395; *Hydeville Co.* v. *Barnes*, 37 Vt. 588; *Huxley* v. *Carman*, 46 Vt. 462.

The auditor should state what items of account he allows. He cannot upon loose talk find a general balance due. *Read* v. *Barlow*, 1 Aik. 145; *Macks* v. *Brush*, 5 Vt. 70; *Manufacturing Co.* v. *Buck*, 16 Vt. 290; *Croker* v. *Goodrow*, 42 Vt. 682.

TYLER, J. It appears by the referee's report that the plaintiff, J. R. Wyman, offered himself as a witness, produced exhibit No. 1 as his book account, and testified that it was in the handwriting of his attorney, who drew it up after the decease of Wilcox and after the appointment of the administrator and commissioners upon his estate. The plaintiff then offered the writing as a book of original entries, and proposed to testify that the plaintiffs had no other book, and that the entries upon the paper were made from their recollection.

If the paper and offered evidence were admissible they were made so by section 1004, R. L., which is as follows: "In actions of book account, and when the matter in issue and on trial is proper matter of book account, the party living may be a witness in his own favor, so far as to prove in whose handwriting his charges are and when made, and no further."                                              ,

The ruling of the referee deprived the plaintiffs of no legal right. The witness could not have testified further without exceeding the statutory limits. If he might testify as proposed it was not by virtue of the section of the statute above referred to.

Section 1002 is a direct inhibition upon the witness testifying. It provides that when one of the original parties to the contract or cause of action in issue and on trial is

dead, * * * * the other party shall not be admitted to testify in his own favor.   It was said by Vesey, J. in *Barnes* v. *Dow*, 59 Vt. 530, that it was the intention of the statute, after the disqualification of interest was removed, to preserve equality in evidence between parties to contracts, so that when controversies arose over them in court the representatives of a deceased party would stand on the same footing with the survivor.

The writing was properly excluded.   As was said by Peck, J., in *Lapham* v. *Kelley*, 35 Vt. 195: "It was not such a book, kept in the regular course of business, as to be admissible as evidence *per se*, independent of the testimony of the party tending to prove the correctness of the entries of the transaction in dispute."   It was a memorandum made by himself of a fact about which he was precluded by the statute from testifying.  *Parris* v. *Bellows' Est.*, 52 Vt. 351.

The defendant's counsel claims that the partnership matters could not be adjusted in this form of action.   The finding of the referee did not involve a settlement and statement of the partnership accounts.   He finds that each partner paid his proportionate share of the expenses, but that he was unable to find the quantity or value of lumber sold or the amount received by each partner from sales; that the intestate received and had the avails of a certain $400 note given to the firm for lumber, and that there were other sales, but that the evidence did not disclose the manner in which the proceeds were divided.

The referee finds from the admissions of the intestate to third persons that he in fact owed the plaintiffs $400, and that the item of $10 for labor performed by the intestate for the plaintiffs, shortly before his death, was performed under an agreement with them that the amount should apply on what he owed them.

Whether the admitted indebtedness arose from the $400

note, or from the $200 which the plaintiffs loaned Wilcox in the year 1865 and which he had not paid, or partly from both items, does not appear. The referee found that business relations had existed between the parties, and that the intestate had admitted that he owed the plaintiffs $400. He did not find and it was not necessary to be found from what transaction the indebtedness arose. It was found upon competent testimony that a short time before the death of the intestate he was indebted to the plaintiffs in the sum of $400. From this sum, upon the facts reported, the credit item of $10 should be deducted.

The referee finds no fact from the testimony of John Wyman from which an inference of law can be drawn, and that testimony is immaterial.

*Judgment reversed and judgment for plaintiffs for $390 and interest.*